William B. HARGLEROAD, Jr., and Marguerite A. Hargleroad, Plaintiffs,

v.

The UNITED STATES of America, Defendant.

Civ. No. 01038.

United States District Court
D. Nebraska.

March 14, 1962.

See also 202 F.Supp. 92.

Edward G. Garvey, and David Beber, Omaha, Neb., for plaintiff.

John T. Piper, Washington, D. C., for defendant.

ROBINSON, Chief Judge.

The above entitled civil action having come on for trial on April 18, 1961, and after due consideration of the pleadings, evidence, exhibits, and briefs of counsel, the Court now enters the following findings of fact and conclusions of law:

## FINDINGS OF FACT

1) This is a civil action brought to recover income taxes, penalty under Section 294(d) (2), Internal Revenue Code of 1939, 26 U.S.C.A. § 294(d) (2), and interest for the calendar year 1954 alleged to have been erroneously and illegally collected from plaintiffs under the internal revenue laws of the United States.

2) Plaintiffs, William B. Hargleroad, Jr., and Marguerite A. Hargleroad, are individuals who, at all times herein material, were residents of Omaha, Douglas County, Nebraska, who reported and paid to the Director of Internal Revenue for the District of Nebraska, Federal income taxes in accordance with their return.

3) On December 15, 1958, the District Director of Internal Revenue issued a formal statutory notice against the plaintiffs of a deficiency in income taxes for the year 1954 in the amount of $32,887.10, and in addition thereto, a penalty under Section 294(d) (2), Internal Revenue Code 1939, in the amount of $1,966.41. In accordance with said deficiency assessment the plaintiffs paid to the District Director of Internal Revenue at Omaha, Nebraska the amount of said deficiency in the total sum of $34,853.51 on March 10, 1959 and thereafter on

March 23, 1959 the plaintiffs paid $7,-704.59 in payment of accrued interest on said deficiency.

4) On November 23, 1959 the plaintiffs filed a claim for refund for said amounts paid in accordance with said notice of deficiency, together with interest thereon. On March 17, 1960 the District Director of Internal Revenue issued his formal notice of disallowance in full of the plaintiffs' claim.

5) On July 3, 1933, Plaintiff, W. B. Hargleroad, Jr. (who will hereinafter be referred to as taxpayer) became associated with the Service Life Insurance Company (hereinafter referred to as Service Life) and continued with that company until April 1, 1954. John A. Farber and Harold Farber were President and Secretary, respectively, of that company. The taxpayer ultimately became Manager of the Mortgage Loan Department.

6) The Farbers and the taxpayer formed Benson Builders, Inc. in 1943 with an initial capital investment of $2500.00, each contributing $833.33. The stock interest of the Farbers was not issued in their name, but, at their request, was put in the name of one Anne S. Schwartz, who endorsed the certificates in blank which were then delivered to the Farbers. The reason for handling the stock in this manner was that the Farbers did not wish their interest to be of record, since Service Life was active in mortgage loans and they did not want other builders who were borrowing customers of Service Life to know they were also interested in a company competing with them.

7) In March of 1954, taxpayer concluded to retire from business and after conferences with Farber it was decided that taxpayer would retire on April 1. They agreed that Benson Builders, Inc. would retire the stock interests of the Farbers and Bialac Construction Company, a wholly owned subsidiary of Benson Builders, Inc., in which it had invested $15,000.00 and to which it had made loans of $18,000.00, would be purchased by the Farbers from Benson Builders, Inc. and the indebtednesses between the parties would all be paid. Complete liquidation of Benson Builders, Inc. was not practical as many of its assets were not readily saleable.

8) The price agreed upon between the parties to be paid by Benson Builders in liquidation of the Farber stock was $24,-550.00 to each of them for their 280 shares. On April 1, 1954, Benson Builders, Inc. issued its check to the taxpayer in the amount of $25,000.00 and he drew a similar amount on that date from another corporation that he owned. These checks were deposited on that date in the taxpayer's personal account and on April 2, 1954 he wrote and delivered to each of the Farbers checks in the amount of $25,000.00. Benson Builders, Inc. issued check dated April 5, 1954 to the taxpayer for $49,100.00 which was marked "liquidation of stock." This check was deposited in the taxpayer's personal account and on that date he issued his checks to Benson Builders and his other corporation, each in the amount of $25,000.00.

9) On April 2, 1954, the Farbers surrendered their Benson Builders stock for cancellation and retirement. The stock was delivered physically on that date to Anne S. Schwartz, Secretary, Benson Builders, Inc. with instructions that it be so retired and all of the certificates were cancelled and each marked "Retired 4–2–54." This fact of retirement was noted on the records of the corporation on that date and a certificate of their retirement on that date was duly filed in the Office of the Secretary of State of the State of Nebraska showing the reduction of the capital stock of Benson Builders, Inc. on April 2, 1954 to 280 shares being the amount at all times owned by the taxpayer. At no time was it intended that the taxpayer should purchase or acquire the Farbers' stock. The agreement and the intent was that Benson Builders, Inc. should purchase and retire it. The Farbers' certificates, received and cancelled by Benson Builders, Inc., were not transferred to the taxpayer; they were not reissued. At

no time was the taxpayer the owner of the Farbers' stock. The circuitous method of clearing the transaction was for the personal reasons of the Farbers and not a bad faith scheme of tax evasion. The agreement for the purchase and retirement of the Farber stock was not made by or for the taxpayer individually or personally, but by Benson Builders, Inc. On April 1, 1954, the taxpayer had a ⅓ interest in the corporation whose stock was worth approximately. $75,000.00 and on April 5, 1954 he had all of the stock of the same corporation whose value was approximately $25,000.

10) The taxpayer did not purchase the Farbers' stock interest on April 2, 1954 and did not on April 5, 1954 cause Benson Builders, Inc. to redeem such stock.

11) The issuance of the check of Benson Builders, Inc. on April 5, 1954 to the taxpayer in the amount of $49,100 was not essentially equivalent to the distribution of the taxable dividend within the meaning of Section 115 of the Internal Revenue Code of 1939.

12) There was no distribution to the taxpayer that was essentially equivalent to a dividend.

## CONCLUSIONS OF LAW

1) This Court has jurisdiction of this cause and the parties thereto by virtue of 28 U.S.C. § 1346(a) (1).

2) The withdrawal of $49,100 made by the taxpayer from Benson Builders, Inc., corporation April 5, 1954 was not essentially equivalent to a taxable dividend under the provisions of § 115 of the Internal Revenue Code of 1939.

3) The inclusion of said amount by the Commissioner of Internal Revenue in the taxable income of William B. Hargleroad, Jr. and Marguerite A. Hargleroad for the year 1954 was erroneous and illegal.

4) That the defendant, United States of America, is liable to the plaintiffs for the sum of $34,853.51 together with interest thereon at the rate of 6% per annum from March 10, 1959 and the sum of $7,704.59 together with interest thereon at the rate of 6% per annum from March

23, 1959, in accordance with the statute in such cases made and provided.

5) Every finding of fact deemed to be a conclusion of law is hereby determined as a matter of law.

## JUDGMENT

In accordance with the foregoing findings of fact and conclusions of law, it is hereby ORDERED, ADJUDGED, AND DECREED, that the plaintiffs, William B. Hargleroad, Jr. and Marguerite A. Hargleroad, have judgment against the defendant in the sum of $42,558.10 together with statutory interest at the rate of 6% per annum from March 10, 1959 on the sum of $34,853.51 and statutory interest at the rate of 6% per annum from March 23, 1959 on the sum of $7,704.59, in accordance with the statute in such cases made and provided.